————o————

JOSEPH D. SHEWALTER, Respondent, *vs.* GUSTAVE PIRNER, *et al.*, Appellants.

1. *Conveyance, by bank—Execution—Signature of president.*—A deed by its terms was made by the Farmers' Bank of Missouri in its corporate name, and was signed by in the usual form, concluding as follows:

"In witness whereof I, Stephen G. Wentworth, as president of the Farmers' Bank of Missouri, by direction of the Board of Directors have hereunto subscribed my name and caused the common seal of said bank to be hereto affixed this 23rd day of February, 1866. (Signed,) S. G. Wentworth, President of Farmers' Bank of Missouri." The official seal of the bank was affixed at the proper place.

Deed held to be that of the bank (Wagn. Stat., 273, § 5). It was unnecessary that it should be signed in the corporate name of the bank by its president.

It is the affixing of the corporate seal that gives the assent of the corporation and establishes the validity of the deed.

2. *Deeds—Description of property—Vagueness of—Land known in community, how—Parol evidence as to.*—Parol evidence is admissible to show that land described in a sheriff's deed is well known in the community by the description given in the deed, however vague the description may appear. And if such can be shown to be the case, so that it can be seen that persons could not be misled or deceived by the description when applied to the actual premises in question, and that no sacrifice of the property could be produced by the description in the deed, it will be held sufficient to pass the title.

3. *Deeds—Description—False calls referring to known monuments—May be rejected when.*—Where there is a false call, demonstration or description in a deed, although it refer to known monuments, if the false description can be rejected and leave sufficient description to identify the land, the false description should be rejected, and the remainder will pass the land.

4. *Corporation—Power to hold land—Question not to be tried collaterally.*—After a corporation, that has the power to hold land, has purchased real estate, and the conveyance has been regularly executed to the corporation, it is not competent for the court, on the trial of a suit in ejectment for the recovery of the land, to decide the collateral question whether it was a violation of its charter for the corporation to receive the conveyance.

*Appeal from Common Pleas Court of Lafayette County.*

*Ryland & Son and X. Ryland,* for Appellants.

I. The deed of the Farmers' Bank of Mo. to Jeremiah Bear, trustee for Susan C. Baer, being signed by the president of the bank, was properly executed and ought to have been received in evidence. It is the seal of the corporation attached to the deed that makes it the act of the bank, it purporting on its face to be the deed of the bank. (Johnson vs. Musser, 42 Mo., 74; Wagn. Stat., 273, § 5; Sug. Vend., [Old 2 Am. Ed.] 501–2; Perry vs. Ruggles, 1 Mo., 349; Ang. and Am. Corp., [6 Ed.], §§ 225, 226; Pitman vs. Kintner, 5 Blackf., 250; Haven vs. Adams, 4 Allen, 80.)

II. It has long been the settled rule of law in this State, that parol evidence is admissible to show that the property conveyed by sheriff's deed is well known by the description therein contained, however vague the description may appear. The object of description is to prevent sacrifice of property, and the property in controversy is sufficiently well known by the description given. (Hart vs. Rector, 7 Mo. 531;

Webster vs. Blount, 39 Mo., 500, and cases there cited from our own court.)

III. The court had no right to inquire in this proceeding into the power of the Farmers Bank to purchase this property. Conceding that the bank had no authority to hold the real estate; there being no express prohibition against buying, the corporation having bought the real estate in dispute, its title acquired was indefeasible for the purposes of alienation, and defeasible only at the instance of the State of Missouri, while undisposed of by the corporation, by direct proceedings against the corporation. The court below therefore erred in rejecting the sheriff's deed, on the ground that the bank had no right to purchase, and in so declaring the law at the instance of respondent. (People vs. Mauran, 5 Denio, 389; Chatauque Co. Bk. vs. Risley, 19 N. Y., 369; Banks vs. Poitaux, 3 Rand. [N. Y.], 139; Sil. Lake Bk. vs. North, 4 John. Ch., 370; McIndoe vs. City of St. Louis, 10 Mo., 573; Union B. R. R. Co. vs. East Tenn. R. R. Co., 14 Ga., 327; Farmers' & Millers' Bank vs. Detroit & Mil. R. R. Co., 17 Wis., 372; Regents of University vs. Detroit Y. M. Society, 12 Mich., 138; Land vs. Coffman, 50 Mo., 243; Ang. & Am. Corp., §§ 152–3; 2 Kent. Com., 282; Merchants Bk. vs. Harrison, 39 Mo., 433; Blunt vs. Walker, 11 Wis., 334; Sherwood vs. Rock River Bank, 10 Wis., 230.)

*J. D. Shewalter*, for Respondent.

I. The sheriff's deed to the bank is void for uncertainty in the description. Known and fixed monuments called for in a grant will control the courses and distances called for in the same instrument. (Campbell vs. Clark, 6 Mo., 221; Campbell vs. Clarke, 8 Mo., 553; McGill vs. Somers, 15 Mo., 80; Wittelsey vs. Kellogg, 28 Mo., 404; Kronenberger vs. Hoffner, 44 Mo., 192; Hall vs. Davis, 36 N. H., 569; Bruckner's Lessee vs. Lawrence, 1 Doug., 19; Wendell vs. Jackson, 8 Wend., 183; 4 Kent's Com., 466 [11 Ed.] and n. 1; 1 Cow., 613; Bell vs. Hickman, 6 Humph., 398; Evans vs. Green, 21 Mo., 170; Jennings vs. Brizeadine, 44 Mo., 332.) "Fronting Pine

street," being a call for a monument, must govern in locating the lot over the call "north of Turners Hall," and, as no lot can be located opening with both calls (they are irreconcilable), the latter must be excluded. As the lot sued for does not front Pine street, but only extends back to an alley, it is not embraced in the sheriff's deed. In the construction of deeds where there are several calls, courts will, if possible, reconcile all ; but where this is impossible, that which is most certain will govern. (Clemens vs. Rannells, 34 Mo., 581; 6 Barb., 258; same case 474; Dana vs. Midellesex, 10 Met., 250; Howe vs. Bass, 2 Mass., 379 ; Miller vs. Cherry, 3 Jones Eq., 25.)

II. The deed, if good as a private grant, would not be good as a sheriff's deed. Greater certainty is required in sheriff's deed. "It should be premised that the same presumption of intendment cannot be inferred from a sheriff's deed, as from a direct conveyence by grantor." (Nelson vs. Broadhack, 44 Mo., 603; Evans vs. Ashley, 8 Mo., 184; Simmonds vs. Catlin, 2 Cains, 65 ; 13 Johns., 532.) Sales by process of law must be governed by very different rules from ordinary conveyances. It must be so described, "that purchasers may know what specific land is put up at auction, and where it lies." (Hart vs. Rector, 7 Mo., 534.) In the present case no witness pretends that it describes any specific lot, and even Wentworth says, it embraces the whole strip of probably a hundred or more lots. In private conveyances equities attach, and these equities "will be enforced by just rules of construction." In sheriff's deeds, however, there is no agreement, no equities, nothing to which the owner has assented, and nothing to be inferred against him.

III. It is admitted that however vague the description in a sheriff's deed, parol evidence is admissible to show that in the neighborhood it is well known by the description given, but if it is shown that a large tract or parcel of land is well known by a certain designation, (e. g. Blackacre,) this of itself will not pass a small indefinite portion of such tract. (Ashley vs. Evans, supra ; Jackson vs. Delancy, 18 John., 107 ; Jackson

vs. Rosvelt, 13 John., 97; Thockmorton vs. Moore, 10 Ohio, 44; 1 Swan [Tenn.], 375; 4 B. Mon. 211; 1 H. & Gil., 172.)

IV. But in this case parol evidence was not admissible to identify the premises,—the ambiguity was patent; it appeared on the face of the deed. The ambiguity was patent, the deed void, and could not be aided by parol. (Hardy vs. Mathews, 38 Mo., 121; Campbell vs. Gabriel, 44 Mo., 448; Jennings vs. Brizeadine, *Ib.*, 333; Hall vs. Davis, 36 N. H., 569; 1 Green, § 297; Broom's Legal Max., 23; Sug. Vend., 18 [Am. Ed., 1836.] The deed to the bank is to a lot "fronting Pine." Parol evidence is not admissible to show that it was intended to convey the lot sued for, which fronts Cedar. The ambiguity is patent, or more properly is a description of a totally different lot.

V. But the parol evidence admitted did not identify the premises, no witness could from the description identify the "specific property" sought to be conveyed, so it was void. They all attempt to locate it by the call for "North of Turners Hall," excluding the call for "fronting Pine Street."

VI. The bank under its charter had no power to become the purchaser of the property. (Dartmouth College vs. Woodward, 4 Wheat., 518; Beaty vs. Knowby, 4 Pet., 152; St. Louis vs. Clemens, 43 Mo., 404, and cases cited by court; Ruggles vs. Collier, 43 Mo., 375; Pacific R. R. vs. Seeley, 45 Mo., 212, and cases cited; Merchants Bank vs. Harrison, 39 Mo., 433.)

VII. It cannot now be said, that the powers of the bank to take and hold this real estate cannot be inquired into, for three reasons: 1st. The appellants, who claim under the bank, went voluntarily into the question of the powers of the bank under its charter to take this real estate, both by attempting to show that the judgment debtors were indebted to the bank at the time of the purchase, and also by an instruction as to its powers, the refusal of which is here assigned as error. Nowhere is it assigned as error that the court could not in this proceeding, go into an examination of the powers of the bank,

but on the contrary the appellants voluntarily went into the question. 2nd. The restriction imposed on the bank is by a general law, and not by its charter. 3rd. This is a sale under process of law, and not a private grant. As to the powers of corporations in collateral proceedings, see Calloway Mining Co. vs. Clarke, 32 Mo., 305; Bank of Ed'ville vs. Simpson, 1 Mo., 129; 2 Mo., 171; Haynes vs. Carrington, 13 S. & M., 411; Whitman Mining Co. vs. Baker, 3 Nev., 391; Life & Fire Ins. Co. vs. Mechanics' Ins. Co., 7 Wend., 34; Bank of Mich. vs. Niles, 1 Doug., 401 [though this was a case for specific performance]; Leazure vs. Hilligas, 7 Serg. & R., 319; Chatauqua Bank vs. Risley, 4 Denio, 488; Rock River Bank vs. Sherwood, 10 Wis., 230; Camden & Amboy, R. R. vs. Com. of Mansfield, 1 Zeb., 510; Downing vs. Mount Wash., 4 N. H., 230; Argenti vs. San Francisco, 16 Cal., 253; Dana vs. Bank of St. Paul, 4 Minn., 385; White Bank vs. Toledo Ins. Co., 12 Ohio St. 601. Their powers are to be strictly construed. (Rice vs. R. R. Co., 1 Black, 358.)

VORIES, Judge, delivered the opinion of the court.

This was an action of ejectment, brought by the respondent against Gustave Pirner to recover the possession of a lot of lands described in the petition as follows:

Being in the city of Lexington, Lafayette county, State of Missouri: "Beginning at a point in the west side of Cedar street in the said city, forty-six feet north of the north-east corner of block number thirty-six, as known and designated on the plat of the first addition to the town of Lexington, now on file in the recorder's office for said county of Lafayette; and being the north-east corner of a piece of land sold by William S. Field to Joseph Traxell, and running thence in a westerly direction, with the line of said land so sold to said Traxell, one hundred and forty-six feet to a point in a private alley left by said Field, and being the north-west corner of said lot so sold to said Traxell, thence in a northerly direction on a line paralled with said Cedar street thirty feet nine in-

ches to the section line between sections thirty-three and twenty-eight in township fifty-one of range twenty-seven, thence east with said section line one hundred and forty feet to a point in the west line of said Cedar street, thence along the said line of Cedar street twenty-nine feet and seven inches to the place of beginning." The petition is in the usual form.

After the commencement of the suit the defendants, Jeremiah Bear and Susan Bear, were made parties defendant at their own request.

The defendants by their answers deny the allegations of the petition, except that the possession of defendant Pirner is admitted; while defendants Bear and wife charge that their co-defendant is rightfully in the possession of the premises as their tenant. Both parties claim to derive title to the premises in controversy through and from George Shewalter and Jeremiah Bear. The plaintiff claims by virtue of a deed from George W. Shewalter and Josiah Bear and his wife to Joseph Shewalter, dated Feb. 10th, 1863; and by deed from Joseph Shewalter to Joseph W. Shewalter (the plaintiff), dated October the 4th 1870.

The defendants claim by virtue of a sheriff's deed, by which the title and interest of George Shewalter and Jeremiah Bear is attempted to be conveyed to the Farmers Bank of Missouri: the land having been sold by the sheriff by virtue of two judgments rendered in the Lafayette Circuit Court, one in favor of the Merchants Bank of St. Louis and against George Shewalter and Jeremiah Bear *et al.*, dated May 24th 1862, for $382; the other in favor of Lee H. Warriner, and against George W. Shewalter and Jeremiah Bear, dated Nov. 27th, 1862, for $672; and executions thereon, which were in due time issued and levied on the land in controversy by the description of "a house and lot, situate on a strip of ground between the first addition and Anderson's addition to Lexington and fronting Pine street, and north of the Turners' Hall in the city of Lexington; lying and being situate in Lafayette county, Missouri:" and by a deed from the Far-

mers Bank of Missouri to Jeremiah Bear, as trustee for Susan Bear, dated February 23rd, 1866. A trial was had before the court, a jury being waived by the parties. After the plaintiff had closed his evidence in the cause, the defendants read in evidence a deed from the Farmers Bank of Missouri to Jeremiah Bear, as trustee, for the land in controversy, dated Feb. 23rd, 1866. The defendants then offered in evidence a judgment and execution thereon, and the levy and return of the sheriff thereon, in a cause of the Merchants Bank of St. Louis against George W. Shewalter and Jeremiah Bear, et al., rendered in the Lafayette Circuit Court on the 24th day of May, 1862, for $382.93.

The plaintiff objected to these records being read in evidence, because the execution was not levied on the premises in controversy. This objection being overruled he excepted.

The defendant then offered in evidence the transcript of a judgment and execution, &c., rendered in the Lafayette Circuit Court in favor of one Warriner against George Shewalter and Jeremiah Bear, rendered on the 27th Nov. 1862, for $672. This was also objected to for the same reason that is given above, and the objections overruled and exceptions saved. The defendants next offered in evidence the sheriff's deed conveying the interest of said Bear and Shewalter in the premises in controversy, by the description in the levy aforesaid, to The Farmers Bank of Missouri by virtue of the said executions and judgments. To the introduction of this deed the plaintiff objected, on the ground that it did not convey the land in controversy, and second, that the sale did not take place at the proper term of the court. These objections were overruled, and the deeds admitted in evidence.

The defendant then introduced several witnesses, who testified that the premises in controversy are well known, in the community and neighborhood where they lie, by the description in the levy made by the sheriff and in the sheriff's deed, that is to say "lying and being situate in the county of Lafayette, in the State of Missouri, to-wit: also a house and lot, situated on a strip of ground between the first addition and An-

derson's addition to Lexington fronting Pine Street, and north of Turners Hall in said city of Lexington," as it was by the description in the petition in the cause; that the "strip" was well known by that name, being an irregular strip of ground lying between the two additions named; that said strip is crossed by streets and alleys; that the house and lot in question is on said strip, and is between Cedar Street and Pine street; that the part of said strip lying between these two streets is laid out intofourlots, that the lots are divided by an alley running parallel with said streets and is at an equal distance from each, leaving two lots on each side of said alley; the two lots lying east of the alley fronting on Cedar street, and those on the west fronting on Pine street; that Turners Hall is situate on the south lot that fronts on Cedar street; that the lot in controversy lies immediately north of the Turners Hall lot, and is the only lot on said strip north of Turners Hall; that the house on said lot is the only house north of Turners Hall on said strip; that the Turners Hall lot, at the time of the sale, was fenced with a tight plank fence the north fence, being the south line of the lot in controversy; that the lot in controversy at the time of the sale was fenced, the fence adjoining the north fence of the Turners Hall lot, but that the north fence of the lot in controversy included a strip, that did not belong to it, but constituted an alley on the north which was included by the fence; that no part of the lot fronted on Pine street, but the rear end of the lot was at least one hundred and fifty feet from Pine street; that Turners Hall is a public hall and well known in the whole neighborhood; that the lot could easily be found and designated by the description in the deed.

Witnesses on the part of the plaintiff testified, that the lot could not well be ascertained by the description in the deed, but the difficulty stated seemed to grow out of the fact, that the size of the lot was not given in the description, and that it was falsely and mistakenly stated to front on Pine street. It was also shown, that the lots on the strip referred to had always in conveyances been described by metes and bounds,

and not designated as lots by their numbers or blocks, and that the premises in question were the only part that George Shewalter and Bear ever owned of said "strip"; that they erected a frame dwelling house on the lot, which was on it previous to, and at the time of, the sheriff's sale. Evidence was also introduced by the defendant, tending to show that George Shewalter and Jeremiah Bear were indebted to the bank at the time of the sheriff's sale, as indorsers for others.

The plaintiff introduced evidence in rebuttal, tending to prove, that George Shewalter and Jeremiah Bear, previous to the sheriff's sale, had a settlement with the "Farmers Bank of Missouri," and extinguished all indebtedness from them to the bank. The acts of the Legislature incorporating "The Farmers Bank of Missouri" at Lexington, and relating to banks, etc., were given in evidence, so far as they applied to said Farmers Bank.

The court, after hearing all of this parol evidence and said acts of the legislature, excluded the deed of the "Farmers Bank of Missouri" to Jeremiah Bear, as trustee of Susan Bear, for the lot in controversy, on the ground that the deed was not executed by the bank, but overruled the ground of objection that the land was not sufficiently described. The defendant at the time excepted. The court also on motion of plaintiff excluded the deed from the sheriff of Lafayette county to the "Farmers Bank of Missouri," on the ground that the bank was not authorized to purchase said real estate, and that no title could therefore vest in the bank by virtue of said sheriff's sale and deed. The defendants again excepted.

The court, at the request of the plaintiff at the close of the evidence, declared the law as follows: "That unless the court believes from the evidence, that the 'The Farmers Bank of Missouri,' at the time of said sheriff's sale, to-wit: On the 25th day of May, 1864, was the owner of the said judgment in favor of the 'Merchants Bank of St. Louis' against said Wyatt Arnold and others, and said judgment in favor of said Lee H. Warriner against said Jeremiah Bear and George W. Shewalter, and the debts evidenced thereby, or one of

said judgments and debts, and that said 'Farmers Bank' be-
came and was the purchaser of the part of said strip of land
mentioned in the said sheriff's deed, in order to secure its
debt or debts, evidenced by said judgments or one of them,
such bank could not purchase such real estate at said sheriff's
sale, and the said sheriff's deed to said 'Farmers Bank of
Missouri' conveyed no title to said part of said strip of land
to said 'Farmers Bank of Missouri,' unless the court further
believes, and finds from the evidence, that said part of said
strip of land was required for the convenience and accomod-
ation of said bank or its branches, or was conveyed by the
owner thereof to said bank in payment of a debt or debts
previously contracted in good faith and without a view to
the purchase thereof."

The defendants objected to this declaration of law, and, their
objection being overruled, they again excepted. A judgment
was then rendered by the court in favor of the plaintiff, for
the possession of the premises in controversy, and damages.

The defendants in due time filed their motion for a new
trial, and assigned among other causes; " that the court re-
jected competent, legal and proper evidence offered by the
defendant;" " that the court rejected the deed from the
'Farmers Bank of Missouri' to the defendant, Jeremiah
Bear as trustee for the defendant, Susan Bear, his wife, dated
23rd of Feb., 1866 ;" that the court made illegal and im-
proper declarations of the law on the part of the plaintiff,
and refused legal and proper declarations of law asked for
by the defendants. The court overruled the defendants' mo-
tion for a new trial, and the defendents again excepted, and
appealed to this court.

There are but few points presented by the record in this
case necessary to be considered by this court, for if the deed
offered in evidence by the defendants from the "Farmers
Bank of Missouri" to Jeremiah Bear, as trustee for Susan
Bear, and the deed from the sheriff of Lafayette county to
the said bank, were properly excluded as evidence in the
cause, then the declarations of law given were properly given,

and those refused were properly refused, and judgment was properly rendered in the cause for the plaintiff. In such case it would be unnecessary to examine any further points in the case. On the other hand, if these deeds were improperly rejected, the judgment must be reversed without regard to any minor points raised on the trial of the cause.

The deed, offered in evidence from the "Farmers Bank of Missouri" to Jeremiah Bear, was objected to and excluded, because it was held by the court below that it was not the deed of the bank, not having been executed by the bank, but being signed by its president. This deed, by its terms, is a deed by the bank in its corporate name, as party of the first part, and is in the usual form, and concludes as follows: "In witness whereof, I, Stephen G. Wentworth, as president of the 'Farmers Bank of Missouri,' by direction of the board of directors, have hereunto subscribed my name, and caused the common seal of said bank to be hereto affixed, this 23rd day of February, A. D. 1866.

[S. G. WENTWORTH,
President of Farmers Bank of Missouri."

The official seal of the bank is affixed to the deed at the proper place. But it is contended, that the deed should have been signed in the corporate name of the bank by the president. This objection is wholly untenable. The deed is executed after the exact form prescribed by our statutes (Wagn. Stat., 273, § 5), and the form used has been held to be good by a number of cases under similar statutes. (Pitman vs. Kintner, 5th Blackf., 250; Haven vs. Adams, 4 Allen, 80; Ang. and Am. Corp., § 225.) It is the fixing of the corporate seal that gives the assent of the corporation, and fixes the validity of the deed. (Perry vs. Price, 1 Mo., 646; 15 Wend., 256.) The deed was properly executed. It conformed to the directions of our statutes on the subject, and was improperly excluded as evidence by the court.

The next question to be considered is as to the propriety of the action of the court below in excluding from the evidence in the cause the deed of the sheriff of Lafayette county,

conveying the premises in controversy to the "Farmers Bank of Missouri." This deed was objected to on three grounds:

First. Because the description of the premises in controversy, as it appeared in the deed, was too indefinite and uncertain to identify the premises in controversy, and the deed was therefore void for uncertainty. Second. Because it appeared by the deed, that the sale by the sheriff did not take place at the proper term of the court.

These objections were overruled, and the deed admitted in evidence; but the court, after hearing other evidence in the cause, tending to prove that the defendants in the execution, under which the sheriff sold the land, were not indebted to the bank, and that the bank had no interest in the executions or judgments under which the land was sold, excluded the deed from the evidence in the cause, on the ground that the bank was not authorized to purchase the land in controversy, and that no title therefore ever vested in the bank. It is insisted by the appellant, that as the two first grounds of objection were overruled by the Common Pleas Court, and no exceptions taken by the respondent, that they cannot properly be considered in this court; but I suppose, that if it should appear from the whole record that the deed had been properly excluded, although it may have been excluded for a wrong reason, this court would not reverse the judgment on that ground alone. Therefore all objections, made to the admissibility of the deed in evidence, are properly before this court for consideration.

The first question then is, was the description of the premises in controversy, as it appears in the deed, so uncertain and indefinite as to render the deed void for uncertainty, and whether the court could properly receive parol evidence to show that the premises were well known, and easily identified and discovered, by the description given?

It is settled in this State by a number of decisions of this court, commencing with the case of Hart vs. Rector, 7 Mo. 531, and ending with the case of Webster vs. Blount, 39 Mo., 500, that parol evidence is admissible to show that the land

described in a sheriff's deed is well known by the description given in the deed, however vague the description may appear. If the land sold is well known, in the neighborhood and community where it is situate, by the description in the deed and levy, so that it can be seen that persons could not be misled or deceived by the description when applied to the actual premises in question, and that no sacrifice of the property could be produced by the description in the deed, it will be held sufficient. In the case under consideration, the premises were described as " a house and lot situated on a strip of ground between the first addition and Anderson's addition to Lexington, fronting Pine street, and north of 'Turners Hall' in said City of Lexington, Lafayette county, State of Misouri."

The evidence shows, that this "strip" is well known, and has been well known for many years, that it is a narrow strip of land lying between the two additions named, that the strip is crossed by streets and alleys, that there are four lots laid off on said strip between Cedar and Pine streets, two fronting on Pine street, and two on Cedar street; that the lot in question is on the west side of, and fronts on, Cedar street, and not on Pine, but that it is the only lot on said strip lying north of "Turners Hall," that the Hall is a public building well known in the community where it is situated, that the "Turners Hall" lot and the lot in controversy are adjoining lots and both fenced in, and the most of the witnesses think that the lot could easily be found and ascertained by the description given in the deed. I think, that the evidence sufficiently shows that the description in the deed could mislead no one, and that the objection to the deed on that ground was properly overruled by the court below. (Henry vs. Matthews, 38 Mo., 121 ; Bates vs. Bank of Missouri, 15 Mo., 309 ; Landes vs. Perkins, 12 Mo., 238 ; Evans vs. Greene, 21 Mo., 170 ; McCune vs. Hull, 24 Mo., 570.)

It is however contended by the respondent in this case, that as the lot is described as fronting on Pine street, to show that it does not front on said street, but on Cedar street, is to contradict the deed, which is not permissible, and that Pine street,

being a natural monument, must control the remainder of the descriptive words in the deed. It is very true, that natural or known monuments will control courses and distances; but it is equally true, that where there is a false call, demonstration or description in a deed, and the false description can be rejected and leave a sufficient description to identify the land, the false description will be rejected, and the remainder of the description, being sufficiently certain, will be sufficient to pass the land. (Cooley vs. Warren, 53 Mo., 166.)

The main question in this case is, was the description in in the deed calculated to mislead or to produce a sacrifice of the property. I think that it was not. The next objection to the admissibility of the sheriff's deed is, that it appeared from the deed the sale did not take place at the term of the court to which the execution was returnable. It is only necessary to say in reference to this objection, that it appears from the sheriff's return read in evidence, that the levy was made on the land before the time fixed for the return of the writ, and that a sale took place as soon as a term of the court was holden at which the sale could take place, the same being done in exact conformity to the act of the Legislature of this State, passed at the session of the General Assembly holden in the year 1863. (Session Acts 1863, p. 20.). The next ground of objection to this deed, and the one on which the Common Pleas Court excluded the deed from the evidence in the cause, was that "The Farmers Bank of Missouri" was not authorized to purchase the real estate in question, and therefore that no title passed to the bank. It is contended by the respondent, that the bank can only purchase or hold real estate for the specific purposes named in the act of the Legislature creating banks, and that, in order to authorize the bank to receive or transmit any title to real estate, it must be shown, that it was purchased for the purposes named in the act. The act relied on is as follows: "Each bank may hold such real estate as may be required for the convenience and accomodation of the bank and branches, and such as may be conveyed to the same in payment of debts

previously contracted in good faith, and without a view to the purchase thereof; and also such as may be purchased at sales upon judgments and decrees in favor of the bank, when it shall be purchased in order to secure the debt. But the Bank shall as soon as practicable under the direction of the bank, dispose of all real estate held by it which is not necessary to the transaction of its business."

The declaration of law, given by the court in trying this cause, assumes that it must affirmatively appear to the court, that the land had been purchased by the bank under the circumstances, and for the purposes, named in the above quoted statute, or the deed attempting to convey the land to the bank will be held to be absolutely void ; and that this matter can be collaterally tried and determined upon a trial of a suit of ejectment. It is admitted, that the powers of corporations should be strictly construed, and that they should not be permitted to exercise doubtful powers. But after a corporation that has the power to hold land has purchased land, and the conveyances have been regularly executed to the corporation, it is not competent for the court, on a trial of a suit of ejectment for the recovery of the land, to decide the collateral question whether it was a violation of the charter of the corporation to receive the conveyance. It is admitted, that there are some cases that may go to that extent, but the better authority seems to be, that the question as to the validity of the title can only be tried in a direct proceeding against the corporation for that purpose. It has been so settled by several cases decided by this court.

In the case of Chambers vs. The City of St. Louis, 29 Mo., 543, the question arose in a suit for partition, whether the City of St. Louis under her charter could take or hold land by bequest, for purposes not "necessary" for the purposes of the corporation. Judge Scott, in delivering the opinion of the court, uses this language : "Whether these lands are necessary for the corporation, is a question that can only arise in a proceeding instituted by the State against the City for abusing her right to purchase lands. The City has a power

to purchase. If that power has been exceeded, then it has been violated, and the City charter may be forfeited in a suitable proceeding; and until that is done, she will hold the land. The city may hold lands outside her limits for certain purposes. Shall she be compelled to contest, with every occupant who may get possession of them, her right to take and hold lands?"

This case was commented on, and fully approved by a late case in this court, where Judge Adams, in delivering the opinion of the court, in speaking of the amount of land that could legally be held by a railroad corporation under our laws, says: "But the amount of land it may receive cannot be decided between these parties; conceding the power to receive lands for the purposes aforesaid, no one except the State can raise the question as to the amount that may be received." (Land vs. Coffman, 50 Mo., 243, and cases there cited: McIndoe vs. City of St. Louis, 10 Mo., 576; Health Comm'rs. vs. Mauran, 5 Denio, 389; Ang. & Ames Corp., § 152; Silver Lake Bank vs. North, 4 Johns. Ch., 370.)

For the reasons, that the deed from the Farmers Bank to Jeremiah Bear, and the deed from the sheriff of Lafayette county to "The Farmers Bank of Missouri," were wrongfully excluded from the evidence in the case, the judgment of the Common Pleas Court of Lafayette county must be reversed. Judges Adams and Napton did not sit.

The other judges concurring, the judgment is reversed, and the cause remanded.