| 93 | 569 |
|----|-----|
| s97 | 213 |

BEERS and another, Respondents, vs. NORTH MILWAUKEE
Town Site Company No. 2, Appellant.

*May 26 — June 19, 1896.*

*Contracts: Construction: Right to stop work: Recovery for future prof-
its: Merger: Previous negotiations: Evidence.*

1. A written contract by which defendant agrees to pay plaintiffs
certain prices per cubic yard of earth excavation and of gravel for
grading the streets, alleys, and blocks of an " addition " and for
depositing gravel on the streets, and providing that the work is to
be executed according to the profiles and plans of the defendant
and the instructions of its engineers; that the amount of excava-
tion from blocks, alleys, and streets in said addition is to be deter-
mined by defendant; that, wherever defendant directs, plaintiffs
are to deposit gravel on the streets in such quantities as may be
directed; and that the work is to be completed before a certain
time — is *held*, in the absence of any showing that any part of the
agreement had been omitted from the writing, not to be a con-
tract for the entire work of grading the said streets, alleys, and
blocks and depositing gravel on the streets, but to reserve to de-
fendant the right to determine how much shall be done and to
stop the work at any time; and the contract cannot, therefore,
form the basis of a recovery for future profits.

2. Statements and representations as to the amount of work to be
done, made during the negotiations and previous to the execution
of the written contract, must be considered to have been merged
therein.

3. Evidence of verbal statements of the plans for doing the work, made
before the written agreement was executed, was inadmissible to
explain the written stipulations.

APPEAL from an order of the superior court of Milwaukee
county: J. C. LUDWIG, Judge. *Reversed.*

This is an action to recover damages for the loss of future
profits by reason of the alleged breach by the defendant of
a contract it had made with the plaintiffs for grading the
streets, alleys, and blocks of addition No. 2 to North Mil-
waukee; the defendant having refused to allow the plaint-

iffs to fully perform their contract. The memorandum of agreement was set out at length in the complaint, and was as follows:

" Party of the first part [defendant], being owners of addition No. 2 to North Milwaukee, agree to pay parties of the second part [plaintiffs] the following prices for grading the streets, alleys, and blocks of said addition, and for depositing gravel or stone spalls on the streets of the same. The work is to be executed according to the profiles and plans of said company, and the instructions of their engineers. The excavation is to be deposited below grade, and where directed. It is mutually agreed and understood that said second party [plaintiffs] will deposit about 3,000 yards of said excavation on adjacent property east of the Cedarburg road, if so directed, without any additional charge per cubic yard. *The amount of the excavation from blocks, alleys, and streets of said addition to be determined by said company.* Wherever said first party [defendant] *directs*, said second party [plaintiffs] is to deposit good gravel or stone spalls, or both, on the streets of said addition, in such quantities as *may be directed*, and in a workmanlike manner, after said streets have been constructed. Work to be commenced on or before May 1, 1893, and to be completed on or before October 1st of same year. Estimates to be made on or about the 1st of each month for work done the previous month, and payments for the same, less fifteen per cent., made about the 5th of the same month. Party of the first part [defendant] agrees to pay parties of the second part [plaintiffs], for doing said work according to the estimates furnished by their engineer, the following prices per cubic yard, measured in excavation:

Earth excavation, per cubic yard.............................$ 20
Gravel or stone spalls, per cubic yard......................... 1 22 "

It was alleged that the profiles mentioned in the contract outlined the surface of the ground so platted, established

the street grades and levels, and showed excavations to be made from said streets, to reduce same to the grades and levels indicated thereon, aggregating 55,113½ cubic yards; and by the plans mentioned in the contract the blocks in said plat were to be graded and leveled so that the same would present as even and level a surface, in conformity with the street levels, as the plat of ground would permit, which would necessitate further excavation aggregating 30,000 cubic yards; that to make and improve the streets of said addition in accordance with the plans mentioned in said agreement, and as contemplated and represented by the defendant, would require the depositing of 10,862 cubic yards of gravel and stone spalls or chips thereon. It is further alleged that the offer made and accepted for doing said work was made according to the profiles then exhibited to the plaintiffs, and the plans of said company, which were *verbally* stated. The gravel and stone spalls, according to said profiles and plans, were to be deposited on the streets to an average depth of eight inches; and the defendant's secretary represented to the plaintiffs that said plans and work (including the like work on their adjacent town site No. 1) would require the excavation and removal of 125,000 cubic yards of earth. It was alleged that the plaintiffs entered upon the performance of said contract concerning town site No. 2, and excavated and removed from its streets 16,185 cubic yards, and sublet other portions, but before the completion of the work, at the request of the defendant, they agreed to and did suspend the work until the next season, May 1, 1894, but the defendant was not ready to proceed with the work that season, and at the opening of the season of 1895, plaintiffs being ready and willing to perform the contract, defendant refused to allow them to resume the work or further to perform the same. The plaintiffs claimed, for the loss of anticipated profits which would have accrued from a full and fair performance of the contract, damages in the sum

Beers and another vs. North Milwaukee Town Site Co.

of $10,162.80, being the profits from 67,125 cubic yards of excavation, and 10,862 cubic yards of gravel and stone spalls, and other items, as stated, and demanded judgment accordingly.

The defendant demurred to the complaint for the reason that it did not state facts sufficient to constitute a cause of action. Upon argument the court entered an order overruling the demurrer, from which the defendant appealed.

For the appellant there were briefs by *Timlin & Glicksman,* and oral argument by *Nathan Glicksman.* They cited *Wells v. M. & St. P. R. Co.* 30 Wis. 605; *Marrone v. N. Y. Jockey Club,* 14 N. Y. Supp. 199; *Brown v. N. Y. C. R. Co.* 44 N. Y. 79; *Bolles v. Sachs,* 37 Minn. 315; *Bailey v. Austrian,* 19 id. 535; *American C. O. Co. v. Kirk,* 68 Fed. Rep. 791; *Hubbard v. Marshall,* 50 Wis. 326; *Hei v. Heller,* 53 id. 415; *Farmers' L. & T. Co. v. Comm. Bank,* 15 id. 424.

For the respondents there was a brief by *Elliott, Hickox & Groth,* and oral argument by *C. T. Hickox.*

PINNEY, J. The contention of the defendant is that, after the plaintiffs had entered upon the work described in the contract, it had the right, when it chose, to interrupt and put an end to the work. The contract seems to be complete in all its particulars, and there is nothing on the face of it to suggest or warrant the belief that any of the terms agreed upon had been omitted or that it did not embrace all that the parties had actually agreed upon, and it does not appear from the complaint that anything can properly be supplied by extrinsic or parol evidence. *Hei v. Heller,* 53 Wis. 415, 418, 419; *Farmers' L. & T. Co. v. Comm. Bank,* 15 Wis. 424; *Caldwell v. Perkins, ante,* p. 89. The contract states that the defendant, being the owner of addition No. 2, "agrees to pay party of the second part *the following prices* for grading the streets, alleys, and blocks of said addition, and for depositing gravel or stone spalls upon the streets of

the same." *Prima facie*, this is not an agreement for grading all the streets, etc., or for graveling or putting stone spalls on all of them. It does not expressly so provide. The subject of the contract is the *prices* per cubic yard of excavation, according to which compensation was to be paid for grading, etc., which was to be done according to the profiles and plans of the company and the instructions of its engineers, the excavation to be deposited where directed; and 3,000 cubic yards of it, if so directed, was to be deposited on the Cedarburg road without additional charge. It is then provided that "the amount of the excavation from blocks, alleys, and streets of said addition is to be determined by said company," the defendant. As to gravel or stone spalls, or both, the plaintiffs were to deposit them "wherever said first party *directs*, . . . in such quantities *as may be directed*, after said streets have been constructed." Beyond question, the quantity, or whether any, indeed, should be so deposited, was optional with the defendant or its engineers.

The case is much stronger for the defendant, in favor of its right to stop the work when it chose, than *Wells v. M. & St. P. R. Co.* 30 Wis. 605. That was a case where the company telegraphed to the plaintiff that it "wanted ballasting done *from B. to M.*, for which it would pay at a certain rate per cubic yard," and plaintiff telegraphed, accepting the proposition; where, also, a written proposition by the plaintiff "to do *all the train work required* by the company for the grading of the depot and side track in the city of M.," at a certain price per cubic yard, was also accepted by the company. It was there held that the contracts were unambiguous, and were only for so much ballasting and grading, respectively, at the places named, *as the company should wish* to have done, and that parol evidence offered by the plaintiff that a specific amount of such ballasting or grading was required at such place to *complete* the work or render the road serviceable, and that he was prevented by the com-

pany from doing such work, to his damage, was properly rejected. In the present case the defendant was to determine the amount of excavation that the plaintiffs were to do, as well as the quantity of gravel or stone spalls, or both, if any, that were to be put on the streets. We think that *Wells v. M. & St. P. R. Co.* rules the present case, and that the demurrer was erroneously overruled. The contention that the provisions of the contract in question gave to the defendant only the right to say that the excavation or fill might, at any particular place, be varied from that indicated by the profiles exhibited and the plans alleged to have been verbally stated before the contract was made, reduces them to comparatively little force or effect, and does not, we think, meet the necessities of the argument. With regard to the statements and representations made during the negotiation, and previous to the execution of the contract, they must be considered to have been merged in the written agreement, so as to be neither pleadable nor admissible in evidence. The area of the cross sections of the profiles referred to in the contract, and their length, reduced the computation of the number of cubic yards of excavation, upon the basis of which compensation was to be made, to a certainty; and if it was intended that the contract was to extend to the grading, etc., of all the streets, etc., then the provision giving the defendant the right to determine the amount of the excavation, under the plaintiffs' contention, would have no substantial force or meaning.

It is said that the plans for doing the work were verbally stated when the contract was made, and that what they were might be shown in evidence, in order to explain the written stipulations of the contract; but what these plans were is not averred or made to appear, and no argument in support of the claim of either party can be based on this ground, as the terms of the contract in that respect are indeterminate and uncertain, and parol evidence to show what

they were would seem to be inadmissible. The case of *Irish v. Dean*, 39 Wis. 562, is quite in point. There D. covenanted with I. to sell and deliver to the latter "milk and cream of good quality and in sufficient quantity for his use in the Park Hotel, kept by him," of which he had a lease for five years from the date of the contract, "said milk and cream to be daily furnished and delivered" at specified prices; and I. covenanted to purchase of D., at said prices, "all the milk and cream that he may use in the hotel kept by him, known as the 'Park Hotel,' and to pay for the same at the end of each month in full." About a year after, I. refused to receive any more milk or cream from D.; and, upon D.'s claim for damages for breach of such contract, it was held that, the contract being silent as to its duration, either party might terminate it at pleasure upon reasonable notice, and parol evidence that the contract was for a specific time was inadmissible.

The contention that the contract in the present case extended to, and unconditionally embraced, the entire work of grading all the streets, alleys, and blocks of addition No. 2, and depositing the gravel or stone spalls on the streets of the same, rests, as it seems to us, upon an implication from the use of general language, which, fairly considered, relates to the work of that kind that the defendant had to do, and is met by, and wholly overcome by, the third clause of the contract, reserving to the defendant the determination of the amount of excavation, and the amount of gravel or stone spalls, or both, that should be deposited upon the streets, as already stated. The allegations of the complaint do not show that any provision legally material to the construction of the contract upon this point was omitted from it, and there are no facts stated in the complaint to furnish any legal ground for any different construction than that the action of the defendant in stopping the work was warranted by the contract. The fact that the work was "to commence

on or before May 1, 1893, and be *completed* on or before October 1st of the same year," does not contravene, but is entirely consistent with, the right of the defendant to determine how much should be done under the contract, in order that it might retain control of the amount of its expenditure in its town-site enterprise, as circumstances might render expedient. No facts are presented by the complaint, if any would be competent, sufficient to furnish any ground for any other construction or different conclusion.

We must hold, upon the case before us, that the contract cannot form the basis of a recovery of future profits. For these reasons the demurrer was improperly overruled.

*By the Court.*— The order of the superior court is reversed, and the cause is remanded for further proceedings according to law.